Good morning, ladies and gentlemen. Welcome to the Illinois Appellate Court. When your case is called, counsels, please approach the bench and state your name for the record, if you would. And we usually give you about 15 minutes for your argument. If you want to reserve some time for rebuttal, feel free. But it may go longer than that if we have a lot of questions. So we'll see what happens. So, would you call the case, please? 122230, James Palmich v. Bernard Kirsner. Thank you. Please approach. My name is James Palmich, and I represent the appellant, James Palmich. Spell your last name, counsel. A-O-N-I-C-E-K. Thank you very much. And, counsel, for the record, you are? My name is Mark Barinholtz, B-A-R-I-N-H-O-L-T-Z. I represent the person. Thank you very much. All right. Mr. Koncheck, would you proceed, sir? May it please the Court, counsel? This is one of the few cases, I guess, the only thing we're agreeing on is I'm the appellant and they're the appellee. Right off the bat, I think it's an important place to start, is the standard of review. There's a dispute in the briefs as to what should be the standard of review on a 2619 motion that was granted by the trial court. And I think what the dispute or wherein the dispute arises is when we're looking at a case where the court has applied judicial estoppel, counsel for the appellee believes that this court should apply an abuse of discretion standard. We believe that the court should apply what has always been applied in a 2619, and that is de novo. Abuse of discretion has always been used as to when the trial court, if he or she used her discretion or his discretion in allowing evidence of a certain nature. In this case, we're not talking about the allowance of evidence. We're saying that the court dismissed as a matter of law a complaint, never got past the pleading stage, and that has always been a de novo review. And I don't think there's any reason to depart from that standard of review. And the most recent case that's been cited on this is the Smealis case, if I'm pronouncing it right. But in there, the appellate court first district made once again clear that the standard of review in a case like this is de novo. The other thing that the court did in the Smealis case is it said in applying the doctrine that was applied by the trial court here and asserted by the defendant, it said you have to meet certain elements. And there's five elements. But more importantly, in meeting the five elements, Smealis made clear that the party seeking to establish the estoppel has the affirmative proof. They have to come forward, not with just evidence, but clear and convincing evidence. And so what the judicial estoppel is, is an affirmative defense to a claim. And in order to prove it, you have to make all of these elements, all five elements, and show them by clear and convincing evidence. And I can't imagine too many cases where a court can make that decision as a matter of law. But focusing on the record in this case, Justices, Judge Savage, in order to reach the decision that she did, and she did it in two parts, really. She applied the doctrine of judicial estoppel based on that May 14, 2010 deposition that was given by Mr. Palmich in the underlying divorce case. By way of background, he had entered into a prenuptial agreement, and then his ex-wife filed for divorce. And the prenuptial agreement and the divorce were combined for purposes of discovery. And he testified in that transcript on May 10, May 14, 2010. I've gone through the transcript again, not only in writing the brief, but preparing for oral argument. And I can't fathom anything within that transcript that Mr. Palmich said that was totally inconsistent with the position he's taking in the malpractice case. Namely, my counsel, my attorney, failed to properly advise me about what a prenuptial agreement can do, what it can be used for, and how it can protect me. Counsel, didn't he say he read it and it was fair and reasonable? That's the second part of how Judge Savage, yes, he did, to answer your question. And, Your Honor, that was the second part of Judge Savage's decision where she relied on the transcript from the prove-up hearing on January 4, 2011. And that, you know, you have the two competing cases there, Your Honor. You have the Larson v. O'Donnell, which was 2005 decision, and then you have the Wolf v. Wolf, which was the 2007 decision. And in the first district, in the Wolf case... Counsel, basically, two different times, under oath, he said he read it and it was fair and reasonable. Absolutely. The marital settlement agreement, he said he read and believed it was fair and reasonable. And you have to do it in light of what occurred at the time. It was fair and reasonable based on the fact that his spouse had a prenuptial agreement that was going to give her the moon and the stars, and his counsel was able to somewhat ameliorate the damage of that agreement. The damages that were caused by this prenuptial agreement by entering into the marital settlement agreement. The Wolf v. Wolf case says that doesn't fall under the doctrine of judicial estoppel. So you're saying he said it was fair and reasonable, but he really didn't believe that. I mean, that's what you're implying. No, no. It was fair and reasonable in the circumstances. You have to look at the totality. Like Wolf said, what did the client at the time have... what was he able to do? He could keep litigating justice, and if he keeps litigating and that prenuptial agreement is applied, then he's lost a lot of money. Or, like a lot of parties... Which brings me back to my point. It was fair and reasonable, but not really fair and reasonable. That's basically what you're saying he was testifying to. It was fair and reasonable under the circumstances, but it really wasn't fair and reasonable if you think about what he could have had, had his attorney been there. If his attorney told him something else. Is that what you're saying? So fair and reasonable doesn't really mean fair and reasonable. It does under the circumstances, just as it did in Wolf. You had the same thing in Wolf v. Wolf, where the wife testified that the settlement agreement was fair and reasonable. Let me ask you another question. When he was asserting in the... he never asserted as a challenge to the prenuptial agreement that he wasn't given proper judicial estoppel. Wouldn't that have been a strong argument for him to make? No. And here's why. Why not? Because it would be ineffective as to the wife. Well, the other arguments turned out to be ineffective too, but wouldn't that have been an argument at least for him to consider? He never made that argument. I mean, this business of not getting proper advice from his lawyer came up later. He asserted three things as a reason for trying to undo the prenuptial agreement. And that wasn't one of them. Why not? Because it wouldn't be effective as to the wife. So in other words, so if we're going to say to the wife and raise a defense to the prenuptial agreement, it's my attorney, me being Mr. Palmich, my attorney messed up. How does that change the outcome with the wife? You can't use that to say undo the prenuptial agreement. The wife's going to say, it was your attorney. So that's not a defense to the prenuptial agreement. But what was the defense and what he asserted was that he had been duped into the, frankly, marriage. Well, that would suggest that he did not have, he didn't enter into the agreement with full knowledge of what it was he was signing, because he wasn't given proper information. Isn't that part of what he is later saying? That's part of the malpractice claim, but that has absolutely nothing to do with the underlying claim. They're two totally separate concepts. And that's the exact same thing that was in the... I know that's your argument, but I'm trying to ask you to explain to me why. Sure. And here's why. Because raising malpractice in the underlying divorce case to undo the prenuptial agreement could never happen. It's not effective as to the wife. He can't say my lawyer screwed up so my wife shouldn't be entitled to the contract she entered into. That would not be the fall into the classic mutual mistake or fraud. That would be a unilateral mistake that this court has rejected since 1818 as a purpose or reason for undoing a contract. Counsel, let me ask you, in Judge Savage's ruling, she states that on September 27, 05, Plano faxed a letter to the defendant, Kirsner, conveying the terms he wished as part of the prenup, which included the $700,000 for a period of seven years. Is that right? Payable over seven years? Yes. And he listed other things that he wanted in the prenup. Is that right? Certainly. And Justice, that's every day. We go to lawyers, if we're non-lawyers, we say this is what we want. This is the outcome we're seeking to achieve. And if you read under the Keefe v. Weiduck case that we cite in other cases, but Keefe more importantly, they said the lawyer is in the peculiar shoes of being lawyers. But in the shoes of the client, if we get into the skin of the client, the client says this is what I want to achieve, and then it's up to the lawyer to say, yes, these are the alternatives. This may be a better way of doing it. That's how we make living, is we say these are the risks, these are the alternatives. And Justice, in this instance, we've pled, and the complaint has to be accepted as true. All the factual allegations under 2619 are true. And we've said that the manner in which the prenup was done, if this divorce ended, I'm sorry, if this marriage ended as it did within three years, she could never under any circumstance have received what she did under the prenuptial from any judge over in that courthouse, or frankly what she received under the settlement agreement. Isn't there like a consideration factor that has to come into play here, too? Yes. You're asking us to create a duty in the realm of legal malpractice here that doesn't seem to be quite out there. And you make the point that, well, if there had been no prenup, what would a fair divorce judge, even a crazy divorce judge, would have awarded in the most extreme circumstances, and it would have cost her this amount of money. But, you know, isn't there a possible, there's a back story here that she wouldn't have married him, were it not for the overly generous prenup agreement? Or the other way, he wouldn't have married her, and he wouldn't be out $500,000. At this point, as I'm doing the math, the case is really about only $200,000, isn't it? The difference between the $700,000 and the $500,000? No, and here's why, because, and again, this would go to expert testimony and questions of the court, but I'm not going to go into that. But the $500,000, he paid too much to get out of what could have been a very bad result. We'll have expert testimony that says, under the circumstances, he would have paid less than $100,000. But that's a factual issue, not at a pleading stage, Justice. Counsel, we're talking about this 2615 now, it sounds like the duty part. Yes. Now, do you want this court to say it is an absolute duty of every divorce lawyer to counsel their client relative to a prenup that what your client is arguing? Is that what you're asking us to do? This is a duty that we're going to make as a law in Illinois? Sure. Well, here's where I'm seeing it, and I'm going to answer your question. There's two issues, really, there's two issues that we're going to have to deal with, and I'm going to do a good job at expressing it. The duty arises by virtue of the relationship, right? I mean, when an attorney enters into a relationship, there's a duty, period. That's a matter of law. That's undisputed throughout history. So then the question is, under these circumstances, what are the obligations that are owed by virtue of that duty? And that's the professional judgment that has quintessentially and always been the subject of expert testimony. So in our complaint, we've pled the duty is that the attorney has an obligation to explain the prenuptial agreement and other alternatives. That's not a quantum leap, but I don't think that's the legal decision of what a duty is. A duty is, as a matter of law, there's a duty. Take the next step, and what should the attorney have done? That is the, that's a question that the courts have always said that the attorney exercise her professional judgment is one for the jury, and it's the subject of expert testimony. I'll have an expert that says, yes, in this circumstance, the lawyer had that duty. And I'm going to answer your question again in this way. If you ruled today that the court improperly entered a 2619, that does not say to the world an attorney has a duty under these circumstances. What it says is there's a question of fact, and that's going to be decided by experts in the trier of fact. As far as the 2615, though, it does. Same thing. Same thing. If it doesn't say that this is a duty owed, that's a complaint, and we plead in the complaint what the allegations are of what the duty is in terms of advising the client, and then what the breach is. Specifically, you say the duty of the attorney was to advise the client not to enter into this kind of prenup. That's an allegation in the complaint. Right. That's what you say the duty was of the lawyer. Right. And if that's sustained here, if the complaint is allowed to go forward, ultimately it's decided by a trier of fact. You're not making a decision as a matter of law that an attorney has to do that. But isn't the existence of a duty an issue of law? For the court to determine? It is. The duty is, does an attorney owe a duty to a client? Yes. And we're a court of review. We have the potential in framing the decision in the case to set a rule that other courts are going to have to follow. And the organized bar would have to follow as well in the realm of legal malpractice. Right. All right. And I see a problem here in that you're asking us to establish a rule saying that a divorce attorney drafting a prenup has a duty to advise the client of the over generosity of the prenup. Yes. I think if that were the law, that would probably be correct. And if we establish that rule, aren't we going to then subject every disgruntled spouse to a potential plaintiff in a legal malpractice case saying, well, if the lawyer would have told me about this obscure tax issue regarding my closely held corporation or whatever, then I would have done something different. And the lawyer didn't exhaustively go through the legal malpractice case to say specifically what I wanted, just to have drafted. That's Keefe v. White-Up. And the first district appellate court said in that circumstance, yes, there's a duty. And that case was even, I mean, remember? And the lawyer had a contract that said I'm going to represent you only on a worker's compensation. And then the third party complaint against the contractor was dismissed in virtue of the statute of limitation. And the lawyer filed a motion to dismiss saying, hey, I'm going to represent you only on a worker's compensation. Hey, my duty was contractual. And I was limited to the worker's comp. And the trial court agreed and it went up to the appellate court and Keefe said, no, a lawyer's obligation is within that scope, is absolutely in the example you used, Justice. I believe that a lawyer, if he undertakes representation of a client, has an obligation in the case. And that's what the client is going to the attorney for, for the advice and for protection. Counsel, let me ask you a question. Just generally, does a will supersede a prenuptial agreement, you know, terms and conditions of a will? I can't answer that. Not that I don't want to. Well, isn't that something that would be interesting for a lawyer to tell their client relative to a prenuptial agreement? Can I have a second? I mean, is there any, pardon me? Can I have a second to think about that? Is there something that's called a sunset clause that sometimes is or is not in prenuptial agreements? Like when this might end, I might reconsider it in 20 years or something like that. Is that ever something that's part of a prenup? I've not seen that. Okay, let me ask you this. As far as appreciation of marital assets, premarital assets, is that something that's ever a term or condition of a prenup? Yes, it can be. Yes. And let's say you'd advise your client specifically about the appreciation of marital assets. Would you say that's a violation of the duty of the lawyer? Yes, I think a lawyer better explain that to a client. So how does a lawyer know what is or is not his duty in advising a client relative to a prenup? Do we need to set every little specific duty out for the lawyer? No, no. And I think that's where I get into my point in under Key versus Weidach, where a lawyer has a duty to explain to a client all those things that fall within the realm of possibility of the representation of a prenup. Key extended it, not me, and said you should consider these other things. But in the context we're talking about here, yes, if you go to a lawyer on a prenuptial agreement, then you should consider everything that could possibly affect whether or not the client should enter into it. I don't think that's unreasonable, number one. And number two, in the end, it's still going to have to be sustained. I can't just walk in and say I win. I have to have an expert to sustain, Justice, that allegation, the allegations contained in my complaint. I need somebody who's qualified that meets the expert requirements for being an attorney to give an opinion. And then the attorney gives the opinion, yes, these are the duties that go along with advising on a prenup. Then the attorney decides whether or not the attorney is an expert, and then a trier of fact decides under 105.01. It says whether or not the attorney breached his duty of care under these circumstances should be decided by experts, learned articles, whatever 105.01 says. And that's for you to decide. And that's exactly how this case should go down. Counsel, as far as the legal standard of malpractice, it's a but-for standard, is that right? In terms of proximate causes, but-for, yes. I don't think you get to that. And I think, again, on the recent decisions out of this Court, the but-for is always a question of fact. I mean, here, it's an easy but-for. I mean, you've already calculated in your own mind it's at least $200,000, but I'm telling you that in front of a jury there will be testimony through experts that this thing, either one, like you asked, Justice, he may not have entered into it. And so he's out $500,000. And that's for a jury to decide. Do they believe Jim or don't they believe Jim on that point? But the expert will say that, look, he gave up more than he would ever have had to given up in an actual divorce under the divorce code. He gave her more. And he should have at least been advised of that. You're giving up the farm. Mr., how do you pronounce your name? The contingency that's a possibility in a prenuptial agreement would have to be covered by the lawyer with his client in order to avoid a finding of malpractice. I mean, that's what you're saying. And how is that possible? How can we, you know, I always say when you come here, you ask us to rule in your favor. We have to write something that's coherent and that seems to make sense. How would you write that? In this circumstance, I would say at this point under a 2-6-15, that is not something that's decided on a question of law. As a matter of law, we haven't pled a complaint. That's easy, I think, in that circumstance. Whether or not we can prove it is a different question. It's just like a medical malpractice case. When you go to your doctor and he says you have cancer, SCIA, shouldn't the doctor explain you can either fight it through surgical procedure or there's this new procedure that they're doing over here in Cleveland at the Cleveland Clinic? We expect that the professionals, when they're acting as professionals, are going to give us... I'm not advocating one side or another, but I disagree that that's an analogous situation because usually in medical situations there's a finite number of options. What your argument is regarding the duty to explain to the client in a prenuptial agreement, depending on the particular client's circumstances, there is an infinite number of contingencies that may have to be explained under your logic. How do you cover all of that waterfront? Under my logic in this complaint, in paragraphs 19 and paragraphs 20, I only say that there was a couple of things. At least explain to the client what you're giving up in the prenuptial is more than you would ever have to give up if this divorce ends in ten days, in six months, in three years, in five years. I don't believe under these facts that are fled in this complaint that that's too much to ask of a lawyer. And explain to him how the divorce procedure works and how she wouldn't be entitled to half of what you're giving her if this divorce ends in three years. That's this complaint. I'm not asking that in addition he should go out and say, well, maybe you shouldn't marry her or maybe you should get this tax advice. This case is on a very small set of facts that are set forth in paragraphs 19 and 20. And it's those facts that he should have given information and advice that these are the options. You're giving up too much in the prenup. How does the husband's desire to save the New York Stock Exchange seat play into this calculation? Because you're saying the prenup is overly generous, but he was determined at all costs to save his New York Stock Exchange seat and keep it away from the new wife. And here's the irony. He didn't need to put that in there. That's premarital. It was never at issue. He was never going to lose his New York Stock Exchange seat. So he gave something for nothing. He wasn't giving up a thing. It would never have been subject to the marital estate. Anything further? I'm happy to answer more questions, but I think really that the case falls under the Wolf v. Wolf standard because the client, it's an informed consent case like Wolf v. Wolf. It's not like that person in Larson where the guy said you're going to pay this in maintenance and you're going to pay this in child support and the numbers are there and he agreed. The numbers weren't there. Let me ask you a question. I know you claim there's a duty to advise. Is there a duty to advise and update as well? Let's say you've had a prenup, you wrote up for someone and then the law changes 20 years later. Do you have to advise that client of the change? I feel like I'm not, but I am answering. Your question is twofold. Fortunately we have a six year statute of repose for lawyers under. Let's say six years. Your Honor, I give seminars, speeches on ethical issues and duties of care and I take the position if there's a change in the law, especially in the area of tax or wills and estates, that you as an attorney have a responsibility to inform the client about that, yes. Even if the attorney-client relationship has been terminated? If it's been terminated, no. Well, isn't that what happened here? What was the continuing attorney-client relationship once the prenup was written? Well, the law didn't change. The prenup when it was drafted was the problem, Justice. I know, but many of the cases referred to have to do with lawyers that prepared the prenup and represented at trial or no? In the divorce action it's something frankly that should be anticipated by the lawyer, defendant lawyer in this case. But that doesn't, I don't think that changes my statement because there's, Justice, there's nothing, the prenup was done two days before the marriage so it couldn't have been changed anyway and there wasn't a change in the law. It was set in stone. That was the problem is the prenup was causing this guy to pay much more than he should ever have in this divorce. Very good, thank you. Good morning, Your Honors. May it please the Court, Counsel, Mr. Conicet. I think Your Honors hit the main points that I made in my brief. To a great extent I'm going to stand on Judge Savage's decision, which I thought was well-reasoned for the point. She got it. She got the evidence. She understood what had happened. In fact, she revealed during the colloquies in the trial court that she had spent, I think it was something like 14 or 15 years in the Family Law Division of the Circuit Court of Cook County. So she understood very well what prenups are all about and what these kinds of situations can give rise to. The case is, as Your Honors have put their finger on, is all about the lack of a duty. If you ignore Judge Savage's decision, which I think is enough to rely on, I think that she got it right with judicial estoppel, I think this is one of the more outrageous scenarios I've seen in my entire practice, where a gentleman swears under oath over and over again, this is okay, this is what I want. But isn't he swearing that that's his opinion and that his opinion, of course, is only an opinion subject to change? I mean, everything I know about judicial estoppel, at least my own personal experience as a lawyer and a judge, has been with people actually suing, you know, to take a position rather than rendering an opinion in a deposition. And isn't it, why isn't it too much of a stretch to say his testimony in the deposition somehow created judicial estoppel? Because it was... Well, I don't mean to be disrespectful. I dispute that it was just merely an opinion. And if you read, it's in the record, the excerpts of the deposition testimony, where he's asked a question about why do you think the prenup is weak or undermined, and then there's a break at some point, right about that point, and he goes out of the room with his lawyer and he comes back in and he gives three reasons, but he doesn't say anything about malpractice. And I know when Mr. Conisic was here just a moment ago, he was talking about, and you asked him about the deposition and the testimony, or at least he mentioned the deposition testimony, and how malpractice is, the elements of malpractice are different than what's going on in the divorce. But I think it's quite clear that he made a strategic decision at that point not to say anything about the malpractice. He could have filed a lawsuit in order to preserve the statute of limitations problem, which we also argue should have been decided in our favor. That's the one element that I think Judge Savage didn't go far enough on, although she said it was hard to believe, I think were her words in her decision, that when Collette filed for divorce in, I believe it was November of 2008, that Mr. Palnick wouldn't have told his lawyers, hey, I got this prenup, and they might have looked at it and said, well, this is going to be a problem, and the fees started racking up. Yet he files the malpractice case more than two years after that point, in April of 2011. But I'm digressing. The point about the deposition is that he could have filed a lawsuit. It didn't need to be in the divorce division. I've run across this problem with arbitrations, where arbitration, filing an arbitration, as I understand it, and maybe somebody advised me improperly, but there's a problem with arbitration, does not toll the running of the statute of limitations. So if you've got a statute of limitations problem, file your lawsuit. He could have filed it in the circuit court of the county, made an immediate motion to stay the action, and to then allow the divorce to play out. Now, Mr. Konasek's characterized it as well, but then the wife would have said, oh, it's the malpractice. Well, hey, we make decisions every day in court, and we suffer consequences of strategy every day in court. By failing to do that at that time, he didn't preserve his rights with regard to our statute of limitations argument. And I don't see that it was so different, the malpractice claim, while the doctrinal threads of the elements, the common law elements of that cause of action may be different than why you get a divorce. That has nothing to do with whether or not ultimately you're going to get a result that you're going to get a result that you can't. That would be the way I would handle it. Well, Mr. Behrenholz, what about, you know, when I get back to the position that the argument that he assumed two inconsistent positions, and that isn't, and his argument that he didn't. I'm sorry, I don't follow you. How do you respond to Mr. Palmich's argument that he did not assume two totally inconsistent positions in the underlying divorce action and the legal malpractice action by first saying that Kirsner, that the Kirsner law firm had properly advised him and then later saying, no, they hadn't. He said he never said that. He just basically said, they didn't give me good advice, and the testimony regarding whether or not the settlement was okay was done within the context of that settlement. He thought it was a good settlement under the circumstances, and he doesn't think that that's an inconsistent position. How do you respond to that? I think it is an inconsistent position. I think to say the only thing that I was troubled by is that she concealed from the fact that she really didn't love me, and that she defrauded me, and that there was some mental issues. You know, he gave two or three issues in the deposition in the divorce. To say that that's totally different in terms of an outcome from the alleged malpractice of not, of Kirsner not advising him that you could have had a sunset clause in the contract, I don't think that's consistent. I don't see the difference. I don't see it being totally inconsistent at all. I see it being another way that the prenup could have been undermined, and if the wife chose to use that instead of the three things that Mr. Palmeck mentioned, well, then, I don't know, that's tough. That's the language I would use. She chose, or he chose not to, Mr. Palmeck chose not to. He chose to remain silent about it, and waited until he'd gone on the record, not only after having sent the facts to Mr. Kirsner way back when, before the marriage even took place, but going on the record, under oath, signing the prenup itself, and then Let me ask you this. Do you think that a lawyer who is representing a client in a prenuptial agreement has any duty to advise the client on what the agreement should contain? Any duty at all? Well, okay, we can start. Here's, yeah. Well, why don't you tell me what duty do you think a lawyer has in that situation, if any? That's not such a tough question. I think it's a tough question, because I was brought out, and I talked, when I before Well, there are a finite number of possibilities. Either they have a duty, or they don't have a duty, or they have some duty. I mean, it's not, there's not an infinite number of possibilities. Does the lawyer have a duty or not? With regard to a prenup? Yeah. I think, I don't think the lawyer does have a duty. I really don't. Okay. So the lawyer is just acting as a scribe? No, not totally. I think he has to have some knowledge of tax law, perhaps, or some, you know, some circumstances, and of the Having knowledge is one thing, but does he have to then impart any information based on that knowledge to his client? I hesitate to say there's a duty, because Mr. Conicek can't articulate it. Well, I'm asking you. I understand you. I'm getting to try to answer your question. And perhaps, given the divorce, the circumstances might reveal there was a duty, for example, let's say you instruct your lawyer that you want your payments to be tax-deductible, and ask clear that you instructed the lawyer to do it that way. And the lawyer goes, oh, well, you know, there's no way to do that. Well, if that runs contrary to the tax law, and it turns out the lawyer could have advised along those lines, then I suppose there was a duty to advise that way. But this case is all about a duration of marriage clause. That's what this whole case is about. I mean, that's the argument. But my question to you is much more limited than that, because I think that, according to your opponent, this case is all about a breach of duty. You say it's about a duration of marriage. He's saying it's about a breach of duty. So my question to you is much more narrow, and it had to do with when a client comes to a lawyer to help him or her. So when you draft a prenuptial agreement, does a lawyer have, does that lawyer have a duty to advise the client on what should be in that agreement, that prenuptial agreement? Yes or no? I think the answer is no, but I also think... So then my next question is the lawyer's purpose, and I asked this before, but you were very clever, you didn't answer it, so let's try it again. What is the lawyer's purpose in that transaction? I would say to memorialize the wishes of the client. So the lawyer is simply acting as a scribe. Well, there's got to be some incremental difference between merely acting as a scribe and bringing to bear... And if he has some knowledge, what does he do with that knowledge? If he has no duty to use the knowledge in any way, what does he do with the knowledge? Well, one item that we brought up, I think, in our brief, and it came from a lawyer named Gitlin's treatise he wrote, was that because the circuit court and the family court retains jurisdiction over prenups, and they can basically, the court can override what the prenup says and do anything they want it to based upon, within reason, based upon the rules of, I guess you'd call it equitable distribution, the lawyer should have at least some knowledge of the Illinois Marriage and Dissolution of Marriage Act. And if you draft a prenup to have too penurious and cheap a solution, it's not going to work. You can't have the clause saying, well, you know, if the marriage doesn't last more for, I'll use the duration clause. If the marriage doesn't last more than a year, I'll give you a dollar. That's not going to hold up. So the lawyer, I think, should have some familiarity and sense of what it is the Illinois Marriage and Dissolution of Marriage Act means when it comes to cementing down an equitable distribution between the parties. And when Mr. Kersner was told by Mr. Palmik, I want to give her this much over a period of, I think it was seven or eight years, he very properly was worried about his New York Stock Exchange seat, because guess what? Those things increase in value. Now, it may have gone down in value as well, but that was a strategic decision he made about the New York Stock Exchange seat. The two other elements were that there was to be an equal distribution of any of the parties. And the bank account moneys or other wealth that was at the time. Well, we've got the record, Mr. Varenholst, so I understand the, I think no one disputes that the agreement was very generous to Ms. Apocello. I think my question was much more narrow. It had to do with whether or not a lawyer has a duty to tell his client anything, and not just specifically what Mr. Konacek is arguing, but whether or not a lawyer has a duty to tell his client anything. But it sounds like you're saying the lawyer has no duty to do anything except write something down, write down whatever the client tells him. If that's the case, the client could have his secretary do that, right, if the lawyer has no duty to do anything other than act as a... I mean, I understand your question, and I think the answer is this court does not need to go that far. They can take it. But I want you to answer the question, even if I don't need to go there. I'm just having a hard time articulating what it might be. What I did when I took this case on, the first thing I did was I talked to as many divorce lawyers as I could, and persons who were, and I'm not testifying, I can't tell you what, I don't have their tape recordings and everything. I'm not asking specifically about divorce lawyers. I was asking about a lawyer's duty when he accepts a client, you know, as his client, and he's drafting an agreement, and this agreement I think is no different from any other agreement, you know, where there is somebody's agreeing to do something in return for the other person doing something else. What duty does the lawyer have to advise his client, here's what you should be asking for, here's that kind of thing. So it's just, you know, does the lawyer have a duty to say anything other than just act as a scribe is what I was really trying to get at. You're suggesting that no, that he has no duty to do anything. I think it's more, maybe it's in the nature of a Hippocratic oath. He has a duty to do no harm. He's got to do what a lawyer would do, and the lawyer in this case did a great deal of harm. So if he has a duty to do no harm, then it's depending on the point of view, the lawyer in this case didn't uphold that duty. Here's the problem I'm having with trying to answer your question, and in light of what I learned when I took this case on, is that, as your Honor's aptly pointed out, there are an infinite number of possibilities. It is virtually impossible to write a decision that is in my opinion, that articulates all of the possible duties that a lawyer who's drafting a prenup might have or not have with respect to a particular client. And I think we have to deal with the facts that we have here, and the facts we have here is Mr. Conacec says that by failing to advise that there could have been a duration of marriage clause, sometimes called a sunset clause, in that contract that that would have been a denial of practice. And one thing he doesn't say about the sunset clause is, when does it kick in? What does it say? Is it in the reverse? Is it a reverse sunset clause? I'll pay you more after three years. Is it one year? Is it two years? Is it five years? Is it ten years? It's infinite, and that's the problem. So to say that a lawyer has a duty to do any particular thing with regard to a client, that's a conceded part of Mr. Conacec's argument, which is he goes half the way. He cites the Illinois Paternal Instruction Rule that says an attorney has a duty to act competently, but he doesn't explain why, as under the Keefe case. He can't articulate, and he cannot come up with a case that articulates any such duty. He didn't have it in his opening brief when we first did a round of motions before Judge Katsayevich. She specifically advised this plaintiff to bring forward a case that says there is such a duty. He came back with an amended complaint. We came back with an amended set of revised motions to dismiss. Again, Mr. Conacec didn't bring forth any kind of a case that said there was any such duty. And here we are in this Court, and they still haven't done it. All he says, well, an attorney has a duty to act competently. He doesn't have the infinite variations of a sunset clause or a duration of marriage clause, as he calls it. And I just don't think this Court can do anything other than logically to say that there is no such duty. But aside from that, we really felt that Judge Katsayevich was absolutely right with regard to the judicial estoppel. I don't know if you want me to wrap it up. We never talked about standard of review. What do you think our standard of review is? I argued it was abuse of discretion. And I tried to distinguish the Smiles case a bit. I think that's what, you know, I don't recall everything I argued in the brief. I pretty much want to rely on what I did say in my brief. But I think that this case is different because of all of the stuff that was in the record. Even if you do review it de novo, I think you're going to come to the same conclusion. In fact, we're asking for fees on appeal. I thought this case was over when it got thrown out with prejudice. And I thought maybe when I got the notice of appeal that he had finally found a case that said, oh, guess what, there is a duty to act a certain way. And that was part of the competency issue. But in terms of the abuse of discretion, I would say her decision with regard at least to the judicial estoppel basis for rendering that decision, Judge Katsayevich's rationale, was so well-grounded and so well-founded and so clear and concrete in the record that only if you find that she abused her discretion has she had a basis to overturn it. And I, you know, we articulated our reason for distinguishing Smiles and the Smiles case. And I think we have some other cases that say why that should be the standard of review here. Thank you, Counsel. Counsel, five minutes. Counsel, but straight to the point I have to ask you. Do we agree the attorney has the duty of reasonable care? Yes. Okay. Let's go on from there. What case do you have that says under Illinois law the duty of reasonable care includes advising your client relative to the duration of marriage clause? I don't have a case. Thank you. And that brings me to my point. The Nelson v. Quarles case that just came out, every other case before that, the elements are there. The duty is what a reasonably competent attorney would do under the same or similar circumstances, Your Honor. And we have decided that issue only through expert testimony, not in a pleading. I'm not going to, in any malpractice case like Keefe v. Weiduck, were they supposed to come in with a case that says the attorney should have advised the client about the third-party action? That's not even a test. That's not even a standard that's ever been applied by any court on how you determine duty. We can't sit here and go through the extrapolations that we've been trying to do. It's impossible. And that's why it's a question of fact. Have we pledged that an attorney owes a reasonable care of duty? That's the standard. And then after that, it's up to experts to decide, one, what is the standard of care, and two, was it breached? The questions that you were asking about ad infinitum, what a lawyer should or shouldn't do under the circumstances, we can't answer here. That's up to expert testimony. We're gone beyond, well beyond what's required in a pleading. The pleading says, does the attorney have a duty of care? Yes. And your conclusion is an attorney always has to act as a reasonably careful attorney, would or like under the circumstances. And then as the First District has said throughout, whether that duty has been breached is a matter of fact, which needs to be decided through expert testimony. That's the law in this state. So we've pledged what we've needed to in order to meet those requirements. And it's because, you know, counsel says he talked to 50 different attorneys. I talked to other attorneys, and they said what he did is wrong. That's not to be decided here. It can't. Especially on a 2619. This is like a trial. There was never a trial or fact. Barth v. Reagan says Judge Savage, even if she was in the divorce court, can't use her judgment in deciding whether there was a breach. The law is very clear on that. Even if she was sitting as the fact finder, she couldn't use her own judgment. It has to be decided through expert testimony. Barth v. Reagan, it's an Illinois Supreme Court case. The other issues, Justice, you asked about whether my client said it was fair in the transcript at the settlement. The page 16 of the transcript, and I apologize because I don't have the record on appeal number, but it's at the proof appearing, page 16. The way it was phrased to him is if you don't agree to the settlement, or if you say the settlement's not fair, do you understand that Collette can go back and try to enforce the prenuptial agreement? It wasn't posed to him as simple as is it fair. Justice, page 20, it specifically said, and you understand that if you decide to use your own judgment, if you decide to contest this settlement agreement, that she can go back and say I'm going to enforce the prenuptial. It was the old Hobson. I understand the context in which it was asked. It's a Hobson's choice. It's a Hobson's choice. Either he agrees to this settlement and pays what little, saves something. Five minutes, that quick? I didn't say Hobson's choice. Either he agrees to it and gets the best deal he can, and under that circumstance it's fair, or he says, nope, I'll fight the prenup. He was going to lose and he'd lose a lot of money. Those are all questions of fact, and it's been pled in the complaint that these are as they existed. The other point I wanted to raise, and I'll do it quickly, is this deposition. It's silly. Look, at page, again, I apologize, I don't have the record on appeal, but these questions start at page 23. Justice, if you go read the questions and what occurred. It says, this is the attorney asking a non-lawyer this question, are you alleging that this document is somehow invalid? And so the poor guy is sitting there and he says, well, yeah, I mean, would we ever let a client say something's invalid or not valid? That's a legal conclusion or opinion. And he says, this is why. You know, because the guy put his heart into a marriage, and he thought it's all valid. So what was his answer to the question? He says, yes, he thinks it's invalid. And then he says, it's because she defrauded me into the marriage. I thought she'd give me everything, everything the spouse would expect from a spouse. What different answer do we expect from a person that's a lay person? And then the trick here, which is somewhat bothersome, is that if you read the record, and when my client is asked about the inconsistencies, and there sure is a break, and what the attorney representing my client, the divorce attorney, did is he did what a good attorney should do. He said, don't talk about the inconsistencies that you and I had. It's right at page 25. If you read from 23 to 25, he instructs the client not to discuss the inconsistencies based on attorney-client privilege. And that is something that this court has always upheld, recently upheld in a decision that I argued before this court less than three months ago. And I took a contempt order protecting the attorney-client privilege. So this lawyer did what a good lawyer should do, said, don't talk about what we talked about regarding inconsistencies, to come in here and now say that by clear and convincing evidence, that proves as a matter of law, judicial estoppels should apply. It's not supported by the record. There is nothing totally inconsistent in that testimony from what the malpractice case is doing. And it sure hasn't been proved by clear and convincing evidence. Thank you.